IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| IN RE: | ) |
| | ) Chapter 12 |
| ROGER L. DUNN and | ) |
| MARGARET DUNN, | ) |
| | ) Bankruptcy No. 15-01552 |
| Debtors. | ) |

**RULING ON MOTION TO INCUR SECURED DEBT**

This matter came on for hearing on May 14, 2018 in Cedar Rapids, Iowa. Larry Eide appeared for Debtors Roger Dunn and Margaret Dunn ("Debtors"). Christopher O'Donohoe appeared for Peoples Savings Bank ("the Bank"). The Court received evidence and heard argument. This is a core proceeding under 28 U.S.C. § 157(b)(2)(D).

**BACKGROUND, FINDINGS OF FACT, AND ARGUMENTS**

Debtors farm corn and soybeans on 92 acres. Debtors live on a 7-acre farm, own another 40-acre parcel, and rent 45 acres from Mr. Dunn's father. The Bank is Debtors' primary lender and has a blanket lien on Debtors' farm assets and a mortgage on Debtors' 40-acre parcel. Currently, the Bank has a claim of about $252,000 secured by farmland, equipment, and cash totaling $307,500.

Debtors need to purchase crop inputs in order to plant crop and farm this year. Debtors have been unable to obtain unsecured credit to finance the crop inputs. Debtors have reached an agreement to finance 2018 crop inputs with

Farmer's Feed and Grain on a secured basis. Under that agreement, Debtors would borrow $18,000 from Farmer's Feed and Grain at 8% interest and grant Farmer's Feed and Grain a security interest in the 2018 crop. Under this agreement, full payment will be due by February 1, 2018. Debtors seek authorization under 11 U.S.C. § 364(c)(2) and (c)(1) to enter into this agreement.

The Bank objects. The Bank argues that it already has a lien on any 2018 crops. The Bank argues that Debtors have been operating at a loss for the last two years with no indication that this year will be any different. The Bank also argues that Debtors could obtain financing by mortgaging their home, which is on 7 acres of unencumbered farm ground. The Bank argues that the cash collateral account, which has only $6,500, is what Debtors should be using for purchases like this.

The Court confirmed Debtors Chapter 12 plan on June 17, 2016. That plan provides, among other things, that Debtors will make the following payments to the Trustee: $29,000.00 on January 15, 2017, $23,500.00 on January 15, 2018, $23,500.00 on January 15, 2019, and $58,350.00 on July 31, 2019. In general, the Bank argues that Debtors have not made a profit from their farming operation since the Court confirmed the plan. The Bank argues that Debtors have made the first two of these payments out of its collateral and that Debtors will be unable to make their $58,350 payment next July. The Bank argues that the Court should not authorize Debtors to incur more secured debt because their plan is not working.

Two of the Bank's employees testified about Debtors' financial situation. Their testimony showed that Debtors have been operating at a loss for the past two years. The Bank's internal cash flow analysis predicted an $8,000 loss for Debtors for the coming 2018 crop year. In general, this testimony showed that Debtors have been unable to make a profit on their farm and have had to sell collateral in order to pay their debt to the Bank.

Debtors argue that the Bank does not have a lien on Debtors' 2018 crop. Debtors argue that the cash collateral order entered in 2016 was limited to the 2016 crop. Debtors also argue that the Bank has a substantial equity cushion. Debtors note that the Bank has over $50,000 of equity cushion. Debtors argue that the Court should authorize them to incur the debt in order to best facilitate the plan. Debtors argue that, without crop inputs, Debtors will be unable to farm and unable to make the payments contemplated under the plan.

## CONCLUSIONS OF LAW AND ANALYSIS

Debtors request authorization to incur secured debt under 11 U.S.C. § 364(c)(2) and, to the extent that there is insufficient collateral, grant Farmer's Feed and Grain a superpriority interest under 11 U.S.C. § 364(c)(1). Section § 364(c) provides:

> (c) If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt—

3

> (1) with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title;
>
> (2) secured by a lien on property of the estate that is not otherwise subject to a lien . . . .

11 U.S.C. § 364. A Bankruptcy Court recently noted that the purpose of this statute is to establish when notice and hearing to creditors is necessary:

> The purpose of § 364(c) is to determine when a post-petition financing transaction is so out of the ordinary course of business of the debtor that the debtor must request bankruptcy court approval of such financing with notice to creditors and an opportunity to object and be heard, to protect creditors' rights.

In re Health Trio, Inc., Bankr. No. 09-34404-JGR, 2018 WL 539817, at *7 (Bankr. D. Colo. Jan. 24, 2018). Although a debtor may be able to obtain unsecured credit in the ordinary course of business—such that court approval is unnecessary—a debtor must receive court approval before entering into secured financing. 11 U.S.C. § 364(a) ("[T]he trustee may obtain **unsecured** credit and incur **unsecured** debt in the ordinary course of business . . . ."). Notice and hearing is required because "[t]he use of unencumbered assets to secure a post-petition lender, increasing the liabilities of the estate, is a transaction which may affect the interest of creditors." Armstrong v. Norwest Bank, Minneapolis, N.A., 964 F.2d 797, 801–02 (8th Cir. 1992). The party seeking authorization bears the burden of proving:

> first, that the proposed financing is an exercise of sound and reasonable business judgment; second, that no alternative financing is available on any other basis; third, that the financing is in the best interests of the

estate and its creditors; and, as a corollary to the first three points, that no better offers, bids, or timely proposals are before the Court.

In re Phase-I Molecular Toxicology Inc., 285 B.R. 494, 495–96 (Bankr. D.N.M. 2002) (quoting In re Western Pacific Airlines, Inc., 223 B.R. 567, 572 (Bankr. D. Colo. 1997)).

Here, the Court must decide, as an initial matter, whether the property at issue (the 2018 crops) are "property of the estate that is not otherwise subject to a lien." 11 U.S.C. § 364. The Bank argues that the 2018 crops are subject to its security interest. The Bank asserts that it has a first security interest in Debtors' crops based on this Court's May 2, 2016 order on cash collateral. Debtors argue that the 2018 crops are not subject to the Bank's security interest because the cash collateral order limited the Bank's lien to the 2016 crops.

The cash collateral order provides, in relevant part:

> 12. As security for the use of cash collateral, the Debtors propose to grant **a security interest post-petition to Peoples Savings Bank in the 2016 crop**, crop insurance and government payments of any nature (and proceeds payments with respect to which such crop inputs relate) to the extent of such funds actually used plus interest and costs thereon.
>
> 13. The Debtors request that Peoples Savings Bank be allowed to perfect **a security interest in the 2016 crop** . . . .

(Doc. 36) at 2 (emphasis added). Later, the order provides:

> This order shall constitute a security agreement between the Debtors and Peoples Savings Bank, **granting to said Bank a security interest in the Debtors' 2016 postpetition farm products**, including, without limitation, crops, supplies used or produced in farming operations,

5

>  contract rights, and accounts, insurance proceeds and U.S. government farm program payments with respect to such crops.

Id. at 3 (emphasis added)

The terms of this order are clear. The Bank has a security interest in Debtors' 2016 crop and farm products. The security interest established by this order does not extend to Debtors' 2018 crops. The Court agrees with Debtors that Debtors' 2018 crops are not subject to the Bank's security interest as provided in the cash collateral order. Accordingly, the property at issue (the 2018 crops) are "not otherwise subject to a lien." 11 U.S.C. § 364.

The Court now addresses the factors for authorization under § 364(c).

First, the Court finds that the proposed financing is an exercise of sound and reasonable business judgment. The Bank does not argue that the terms of the financing are not sound and reasonable. The Court specifically finds that the terms of the proposed financing are reasonable.

Second, Debtors assert that they have been unable to obtain unsecured credit under § 503(b)(1) or secured credit on other terms. The Bank does not address or otherwise dispute this issue. The Court considers this element unopposed. Moreover, Debtors' inability to obtain unsecured credit or secured credit on terms that are more favorable is consistent with the testimony presented. The Court finds that Debtors have been unable to obtain unsecured credit under § 503(b)(1) or secured credit on other terms.

Finally, the parties dispute whether the financing is in the best interests of the estate and its creditors. Much of the evidence that the parties presented addressed the feasibility of Debtors' already-confirmed plan and the extent of the Bank's equity cushion. While all these facts play into whether the financing is in the best interests of the estate and its creditors, no single factor controls. The evidence shows that Debtors have operated at a loss, will continue to do so if nothing changes, and that they face an uphill battle to finance their plan payments.

The Court considers these facts as a part of the whole record and concludes that the financing is, for now, in the best interest of the estate and its creditors. While the Bank showed that Debtors have been operating at a loss for the last two years, predicting that Debtors would again operate at a loss this coming year, Debtors presented evidence that the operation could be profitable this year. Although the margin is thin, Debtors showed that farming this year should produce at least a small profit and benefit the estate.

The Court further notes that the Bank's substantial equity cushion of about $50,000 means that the financing Debtors request may not seriously prejudice the Bank's position. The Bank's security exceeds the value of its debt by almost 20%. The Bank is thus adequately protected moving forward. Although this does not mean that the financing would benefit the estate—it does show that the Bank is protected against the risks of another year of farming. Debtors have narrowly met

their burden to show that the financing they request would benefit the estate. As a result, the Court approves their request to incur secured debt.

## CONCLUSION

**WHEREFORE**, Debtors' Motion to Incur Secured Debt is GRANTED.

Dated and Entered:

May 17, 2018

*/s/ Thad J. Collins*
THAD J. COLLINS
CHIEF BANKRUPTCY JUDGE